UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAINTE DESHAWN HICKEY,

                    Petitioner,

                                        CASE NO. 2:12-CV-14635
v.                                      HONORABLE ARTHUR J. TARNOW

CARMEN PALMER,

                    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.     Introduction**

        This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner

Kainte Deshawn Hickey ("Petitioner") was convicted of first-degree premeditated

murder, MICH. COMP. LAWS § 750.316, conspiracy to commit murder, MICH. COMP.

LAWS § 750.157a, assault with intent to commit murder, MICH. COMP. LAWS § 750.83,

felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of

firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a

joint jury trial with co-defendants Quonshay Douglas-Ricardo Mason and Andre Lamont

Jackson in the Wayne County Circuit Court.  He was sentenced to concurrent terms of life

imprisonment without the possibility of parole on the murder and conspiracy convictions,

a concurrent term of 23 years 9 months to 50 years imprisonment on the assault conviction, a concurrent term of 3 years 4 months to 5 years imprisonment on the felon in possession conviction, and a consecutive term of 2 years imprisonment on the felony firearm conviction in 2008.

In his pleadings, Petitioner raises claims concerning the effectiveness of counsel, the sufficiency of the evidence, the conduct of the prosecutor, the conduct of the trial judge, and the denial of a motion for new trial based upon newly-discovered evidence. For the reasons set forth herein, the Court finds that those claims lack merit and denies the habeas petition. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.     Facts and Procedural History

Petitioner's convictions arise from a shooting incident that occurred in Detroit, Michigan in 2007. The Michigan Court of Appeals described the relevant facts, which are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Defendants' convictions arise from the fatal shooting of Bennie Peterson and the nonfatal shooting of Donteau Dennis during the early morning hours of September 28, 2007, in the city of Detroit. Defendants were tried jointly with codefendant Andre Lamont Jackson, who was also convicted of first-degree premeditated murder, conspiracy to commit murder, assault with intent to commit murder, and felony-firearm.

Dennis was the primary prosecution witness at trial. Dennis testified that he was at the home of Bennie Peterson when defendant Mason came to the house and invited them to participate in a planned robbery of a drug purchaser at the Cabana Hotel. Mason told them that the purchaser would be carrying a large sum of money. Peterson and Dennis agreed to go, and they left with Mason in Peterson's van, with Mason driving. Codefendant Jackson followed them in a Jeep. According to Dennis, Jackson positioned himself in the Jeep to prevent Dennis from seeing another occupant in the Jeep.

Instead of driving to the hotel, Mason drove to Malcolm Street, where he instructed Dennis to purchase drugs from a drug house; informing him that the drugs would be used as bait in the planned robbery. As Dennis began walking toward the drug house, he noticed that Mason and Jackson had positioned their vehicles so that Peterson's van was trapped between the Jeep and another parked car. Hickey then approached Dennis, apparently having come from Jackson's Jeep. Dennis owed a $50 drug debt to Hickey, who shot Dennis. During this same time, Dennis saw Mason and Jackson exit their vehicles carrying guns, and one or both of them fired into the van. Peterson died from multiple gunshot wounds. Dennis was shot several times, but fled to the backyard of a home nearby and survived.

Detroit Police Officer Frank Senter found Dennis lying in the backyard of that home. Dennis told Senter that Hickey had shot him over a drug debt, but did not say anything about Peterson, Mason, or Jackson. Over the next few days, Sergeant William Anderson interviewed Dennis at the hospital. Dennis reiterated that he was shot by Hickey, and also reported that Mason and Jackson had killed Peterson.

After Hickey and Mason were convicted, they both filed motions for a new trial. Mason submitted an affidavit in which he averred that he and another man, Hosiea "Man-Man" Turner, waited outside the Cabana Hotel while Peterson robbed a drug addict and Dennis stole a gun from the robbery victim's car. Mason claimed that when the group reconvened on Malcolm Street, Dennis and Peterson began arguing over the division of the robbery proceeds and struggled over the stolen gun. According to Mason, Dennis shot Peterson, jumped out of the van, and began to shoot at Mason and

>Turner, prompting Mason to shoot back in self-defense. Mason said that
>Jackson and Hickey were not present at the time of the shooting. Turner
>also submitted an affidavit that roughly corroborated Mason's version of
>events. Mason sought a new trial on the ground that defense counsel was
>ineffective for not calling Mason to testify to this version of events at trial.
>Hickey argued that Mason's affidavit and proposed new testimony was
>newly discovered evidence entitling him to a new trial. The trial court
>denied Mason's motion for a new trial, noting that Mason's trial counsel
>credibly testified that Mason's version of events was entirely different from
>the version that he related to counsel before trial. The court also denied
>Hickey's motion, concluding that Mason's proposed testimony was not
>newly discovered, but rather newly available evidence which Hickey did
>not attempt to secure before trial.

*People v. Hickey*, No. 285253, 2011 WL 801034, *1-2 (Mich. Ct. App. March 8, 2011)

(footnote omitted) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with

the Michigan Court of Appeals, raising claims of insufficient evidence, prosecutorial

misconduct, trial court partiality relative to the evidentiary rulings and the jury

instructions, ineffective assistance of trial counsel for failing to object to prosecutorial

misconduct and hearsay and failing to obtain the investigative subpoena transcript, and

trial court error in denying his new trial motion based upon newly-discovered evidence.

The Michigan Court of Appeals denied relief on those claims and affirmed his

convictions. *Id.* Petitioner then filed an application for leave to appeal with the Michigan

Supreme Court raising the same claims, as well as claims that trial counsel was

ineffective for failing to call two alibi witnesses and appellate counsel was ineffective for

failing to raise that issue on appeal.  The court denied leave to appeal in a standard order.

*People v. Hickey*, 489 Mich. 993, 800 N.W.2d 88 (2011).

Petitioner, through counsel, thereafter filed his federal habeas petition.  He raises

the following claims:

> I.      He was denied the effective assistance of counsel.
>
> II.     The evidence was insufficient to prove beyond a reasonable doubt
>         that he knowingly aided or abetted others in the murder of Bennie
>         Peterson or that he knew or had any role in any conspiracy to
>         commit murder.
>
> III.    He was denied his Sixth and Fourteenth Amendment rights to a fair
>         trial and due process of law through improper argument by the
>         prosecutor.
>
> IV.     The trial court's improper conduct denied him a fair trial.
>
> V.      The trial court erred by denying him a new trial based on newly-
>         discovered evidence.

Respondent filed an answer to the habeas petition contending that it should be dismissed

as a mixed petition and/or that it should be denied for lack of merit.  Petitioner filed a

reply brief essentially re-asserting his claims for relief.

## III.    Standard of Review

Federal law imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision.

*Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)

(noting that the Supreme Court "has held on numerous occasions that it is not 'an

unreasonable application of clearly established Federal law' for a state court to decline to

apply a specific legal rule that has not been squarely established by this Court") (quoting

*Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at

71-72.  Section 2254(d) "does not require a state court to give reasons before its decision

can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100.

Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not

even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8

(2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established

law" are to be determined solely by Supreme Court precedent, the decisions of lower

federal courts may be useful in assessing the reasonableness of the state court's resolution

of an issue.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v.*

*Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359

(E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal

habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with

clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Moreover, habeas review is "limited to the record that was before the state court." *Cullen*

*v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Analysis

### A.    Exhaustion

As an initial matter, Respondent contends that Petitioner's claims of ineffective

assistance of counsel regarding the failure to call two potential alibi witnesses,

Petitioner's sister and her fiancé, and the failure to call co-defendant Mason and Hosiea

Turner as witnesses at trial have not been properly exhausted in the state courts such that

the petition is subject to dismissal.  Petitioner asserts that he properly exhausted all of his

issues in his petition and in his reply brief, but does not elaborate on the matter.

A state prisoner filing a habeas petition under 28 U.S.C. §2254 must first exhaust

state court remedies.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state

prisoners must give the state courts one full fair opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review

process); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). To satisfy the exhaustion

requirement, the claims must be "fairly presented" to the state courts, meaning that the

petitioner must have asserted both the factual and legal bases for the claims in the state

courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Williams v.*

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans*). The claims must be

presented to the state courts as federal constitutional issues. *Koontz v. Glossa*, 731 F.2d

365, 368 (6th Cir. 1984). For a Michigan prisoner, each issue must be raised before the

Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion

requirement. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (citing *Hafley v.*

*Sowders*, 902 F.2d 480, 483 (6th Cir. 1990)). While the exhaustion requirement is not

jurisdictional, a "strong presumption" exists that a prisoner must exhaust available state

court remedies before seeking federal habeas review. *Granberry v. Greer*, 481 U.S. 129,

131, 134-35 (1987); *Wagner*, 581 F.3d at 415 (citing *Harris v. Lafler*, 553 F.3d 1028,

1031 (6th Cir. 2009)). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d

at 160.

In this case, Petitioner first raised his ineffective assistance of counsel claims

regarding the alibi witnesses and the other witnesses before the Michigan Supreme

*Hickey v. Palmer*
Case No. 2:12-CV-14635
Page 11 of 46

Court.[1]  Presenting new issues for the first time before a state supreme court on

discretionary review, however, does not amount to a "fair presentation" of those claims to

the state courts for exhaustion purposes.  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

Petitioner thus failed to properly exhaust all of his claims in the state courts before

seeking federal habeas review.

　　The Court, however, declines to dismiss the petition on such a basis.  While the

exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for

bringing a habeas petition.  *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987); *Rockwell

v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000).  For example, an unexhausted claim may be

addressed if pursuit of a state court remedy would be futile, *see Witzke v. Withrow*, 702 F.

Supp. 1338, 1348 (W.D. Mich. 1988), or if the unexhausted claim is meritless such that

addressing it would be efficient and not offend federal-state comity.  *See Prather v. Rees*,

822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition

may be denied on the merits despite the failure to exhaust state court remedies).  The

Court finds that the interests of justice would be best served by adjudicating Petitioner's

claims because further exhaustion in the state courts is likely to be futile and because the

---

[1]Petitioner raised the issue of co-defendant Mason's and Hosiea Turner's testimony before the Michigan Court of Appeals as part of his motion for new trial/newly-discovered evidence claim, but did not assert that counsel was ineffective.

11

claims lack merit and may be denied despite any lack of exhaustion.  The Court will

therefore proceed to the merits of Petitioner's claims.

### A.      Ineffective Assistance of Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because trial counsel was

ineffective for failing to raise an alibi defense, for failing to object to the prosecutor's

mis-characterization of testimony, for failing to object to the prosecutor reading

statements into the record, for failing to secure a copy of investigative subpoena

testimony before trial, for failing to object to the prosecutor's closing argument, for

failing to object hearsay testimony, and for failing to call exculpatory witnesses.

Respondent contends that these claims lack merit.

The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*,

466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for

determining whether a habeas petitioner has received ineffective assistance of counsel.

First, a petitioner must prove that counsel's performance was deficient.  This requires a

showing that counsel made errors so serious that he or she was not functioning as counsel

as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the

petitioner must establish that counsel's deficient performance prejudiced the defense.

Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate

13

courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1.    Alibi Witnesses

Petitioner first asserts that trial counsel was ineffective for failing to call Petitioner's sister and her fiancé as alibi witnesses at trial. He relatedly asserts that appellate counsel was ineffective for failing to properly raise this issue on appeal. According to the witnesses' affidavits, which were signed in 2011, they would have testified that Petitioner had his car towed to their house at 1:30 a.m. on the day of the shooting, that they went to bed and set their house alarm, and that the house alarm did not sound until 9:00 a.m. The witnesses claim that trial counsel knew of their proposed testimony and chose not to call them because he did not believe that their testimony was necessary.

Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at

14

691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395

F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to

investigate all witnesses who may have information concerning . . . guilt or innocence."

*Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and

whether to call certain witnesses are presumed to be matters of trial strategy. When

making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*,

528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call a

known alibi witness can constitute ineffective assistance of counsel, *Bigelow v. Williams*,

367 F.3d 562, 570 (6th Cir. 2004), but counsel is not required to call a witness whose

credibility is questionable. *Thurmond v. Carlton*, 489 F. App'x 834, 840 (6th Cir. 2012).

The failure to call witnesses or present other evidence constitutes ineffective assistance of

counsel only when it deprives a defendant of a substantial defense. *Chegwidden v.

Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th

Cir. 2002).

In this case, it appears that trial counsel was aware of the potential alibi witnesses

and chose not to call them at trial. The question then is whether counsel's strategic

decision was reasonable. The Court finds that it was. Trial counsel may have reasonably

decided not to call Petitioner's sister and her fiancé as alibi witnesses based upon several

factors. First, he may have questioned their reliability due to their familial relationship

with Petitioner and/or had concerns about the jury's view of their credibility.  *See, e.g.,*

*Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012) (defense counsel's decision

not to pursue an alibi defense was reasonable given his concerns about family members'

credibility).  Second, he may have found that their proposed alibi testimony was imperfect

since they could only testify that Petitioner was at their home at 1:30 a.m. and that they

set their home alarm before going to bed, but could not verify with certainty that

Petitioner remained in their home at the time of the shooting.  *See, e.g.*, *Moore v. Parker*,

425 F.3d 250, 253-54 (6th Cir. 2005) (counsel was not ineffective for failing to call

family members as witnesses where they could not provide an airtight alibi).  Third, he

may have believed that contesting the prosecution's case and casting doubt on the

credibility of prosecution witnesses would be more effective in creating reasonable doubt

than presenting an alibi defense which would be subject to significant challenge.  *See,*

*e.g.*, *Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may

be "better to try to cast pervasive suspicion of doubt" by challenging the prosecution's

case than to "strive to prove a certainty that exonerates").  To be sure, the record reflects

that counsel's strategy was to attack the surviving victim's credibility and create a

reasonable doubt about his version of events.

  Moreover, the record indicates that trial counsel consulted with Petitioner about

whether to call defense witnesses (a witness list had been submitted) and Petitioner

acknowledged that no witnesses would be called and that he did not want to testify on his own behalf at trial. *See* 3/24/08 Trial Tr. pp. 93-94. Petitioner's acquiescence in counsel's strategy, while perhaps not dispositive on this issue, surely supports a finding that counsel's decision not to call the witnesses was reasonable at the time it was made. *See, e.g., Turner v. Romanowski*, No. 05-CV-70723-DT, 2007 WL 2875250, *12-13 (E.D. Mich. Sept. 28, 2007) (noting that petitioner personally waived right to call alibi witness at trial and denying habeas relief on similar claim).

Petitioner fails to overcome the presumption that counsel's conduct was sound trial strategy. *See, e.g., Roush v. Burt*, 313 F. App'x 754, 761 (6th Cir. 2008) (finding no reason to deem counsel ineffective for failing to call witness where record showed counsel investigated that witness). The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Petitioner also fails to demonstrate that he was prejudiced by counsel's decision not to call the potential alibi witnesses at trial. First, the witnesses' credibility was an issue given their familial relationship with Petitioner. Second, the witnesses could not provide an airtight alibi for Petitioner. Third, the surviving victim, who was familiar with Petitioner, positively identified him at the scene, at the hospital, and at trial as one of the

17

perpetrators of the crime.  *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013);

*cert. den.,* _ U.S. _, 133 S. Ct. 2866 (2013) (finding that petitioner could not show that he

was prejudiced by counsel's failure to call alibi witness where two eyewitnesses who

were familiar with him positively identified him as the perpetrator).  Petitioner thus fails

to establish that trial counsel was ineffective.

With regard to appellate counsel, it is well-established that a criminal defendant

does not have a constitutional right to have appellate counsel raise every non-frivolous

issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States

Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose
> on appointed counsel a duty to raise every "colorable" claim suggested by a
> client would disserve the … goal of vigorous and effective advocacy ….
> Nothing in the Constitution or our interpretation of that document requires
> such a standard.

*Id*. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel."  *United States v. Perry*,

908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is

the "process of 'winnowing out weaker arguments on appeal and focusing on' those more

likely to prevail."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at

751-52).  "Generally, only when ignored issues are clearly stronger than those presented

will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

In this case, Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal and was able to garner an evidentiary hearing on certain issues. Such performance was strategic and reasonable. Furthermore, given the Court's determination that this claim lacks merit, Petitioner cannot establish that appellate counsel was ineffective. Counsel cannot be deemed deficient for making a meritless argument. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Petitioner fails to establish that trial counsel or appellate counsel were ineffective.

## 2. Prosecutor's Characterization of Testimony & Closing Argument

Petitioner also asserts that trial counsel was ineffective for failing to object to the prosecutor's characterization of the number of shots inflicted upon Donteau Dennis and for failing to object to the prosecutor's closing argument, including the prosecutor's comment that defense counsel lied to the jury.

*Hickey v. Palmer*
Case No. 2:12-CV-14635
Page 20 of 46

The Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish that trial counsel was ineffective for failing to make such objections because the prosecutor's conduct was either proper or not prejudicial.  *Hickey*, 2011 WL 801034 at *8.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Given the state court's ruling on the underlying prosecutorial misconduct issues and this Court's agreement that those claims lack merit, Petitioner cannot establish that counsel erred or that he was prejudiced by counsel's conduct.  Defense counsel cannot be deemed ineffective for failing to make a futile or meritless objection.  *Coley*, 706 F.3d at 752; *Steverson*, 230 F.3d at 225. Petitioner fails to demonstrate that counsel was ineffective.

### 3.      Prosecutor Reading Statements into the Record

Petitioner also asserts that trial counsel was ineffective for failing to object to the prosecutor reading prior statements of witnesses Donteau Dennis and Yolanda Bishop into the record.  Petitioner alleges that those prior statements were inadmissible hearsay.

The Michigan Court of Appeals denied relief on this claim finding that even if the statements were inadmissible, they were not prejudicial because Dennis's statement was cumulative to his trial testimony and Bishop's statement (and her trial testimony) did not reference Petitioner.  *Hickey*, 2011 WL 801034 at *8.

20

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner cannot demonstrate that he was prejudiced by counsel's conduct in this regard. First, the Court notes that the admission of the statements did not violate Petitioner's confrontation rights because Dennis and Bishop both appeared and testified at trial. *See Crawford v. Washington*, 541 U.S. 36, 54 (2004) (ruling that the testimonial statement of a witness *who does not appear at trial* is inadmissible unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness). Second, as explained by the Michigan Court of Appeals, Dennis's statement was cumulative to his trial testimony and Bishop did not reference Petitioner in her statement or her trial testimony. Petitioner fails to establish that counsel was ineffective.

### 4. Investigative Subpoena Testimony

Petitioner next asserts that trial counsel was ineffective for failing to obtain a copy of Donteau Dennis's investigative subpoena testimony before trial. Petitioner alleges that counsel was unprepared to effectively cross-examine Dennis and other prosecution witnesses.

The Michigan Court of Appeals denied relief on this claim finding that the prosecution failed to disclose the information until trial, that the trial court gave the defense attorneys the opportunity to review the material at the time of trial, and that

Petitioner failed to explain how counsel was deficient in not obtaining it sooner and how he was prejudiced by the untimely production. *Hickey*, 2011 WL 801034 at *8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner fails to allege facts to show that the late disclosure of Dennis's investigative subpoena testimony was trial counsel's fault, rather than the prosecutor's, and fails to allege facts to show that he was actually prejudiced by the late production of the information. Conclusory allegations are insufficient to warrant federal habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Petitioner thus fails to establish that counsel erred or that he was prejudiced by counsel's conduct.

### 5.    Hearsay Testimony

Petitioner next asserts that trial counsel was ineffective for failing to object to hearsay testimony from Donteau Dennis about a prior incident in which Petitioner approached the deceased victim, Bennie Peterson, with a gun.

The Michigan Court of Appeals denied relief on this claim finding that counsel's conduct was a matter of trial strategy and was reasonable under the circumstances. The court explained:

> Hickey also argues that his trial counsel was ineffective for failing to object to Dennis's hearsay testimony, during cross-examination by Jackson's counsel, that he heard about a prior incident in which Hickey approached Peterson's car with a gun. It appears from Dennis's initial testimony that he personally observed the incident. It was not until later that Dennis clarified that he only heard about the incident, at which point Jackson's counsel did not pursue the issue. Hickey's counsel had no apparent basis for objecting until the latter testimony was given. In this circumstance, the decision whether to object was a matter of trial strategy. Counsel reasonably may have concluded that Dennis's acknowledgment that he did not personally observe the incident diluted any prejudicial effect, and declined to object as a matter of strategy to avoid drawing attention to the matter. Hickey has not overcome the presumption of sound strategy.

*Hickey*, 2011 WL 801034 at *8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Counsel had no reason to object to Dennis's initial testimony and may have subsequently decided not to object in order to avoid drawing further attention to the matter and to avoid objecting during co-counsel's questioning of the witness. Counsel's conduct was reasonable. Petitioner fails to overcome the presumption that counsel's conduct was sound trial strategy. He thus fails to establish that counsel was ineffective.

23

### 6.      Other Defense Witnesses

Lastly, Petitioner asserts that trial counsel was ineffective for failing to call co-defendant Mason and Hosiea Turner as witnesses at trial. Petitioner, however, fails to establish that counsel erred or that he was prejudiced by counsel's conduct. As discussed *supra*, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy, *Roe*, 528 U.S. at 481, and the failure to call witnesses constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden*, 92 F. App'x at 311; *Hutchison*, 303 F.3d at 749.

With respect to co-defendant Mason, the evidentiary hearing record indicates that counsel believed that Mason was going to testify at trial and planned accordingly, but Mason subsequently decided not to do so. *See* Evid. Hrg. Tr. pp. 35-36. At that juncture, counsel had no right to compel Mason to testify at the defendants' joint trial. *See, e.g., United States v. Barber*, 442 F.2d 517, 529 n. 22 (3d Cir. 1971) (noting that defendant cannot compel co-defendant to testify whether they are tried jointly or severally); *United States v. Anton*, No. 1:06-cr-00029-MP-AK, 2007 WL 881650, *5 (N.D. Fla. March 22, 2007) (stating that defendant has no right to compel co-defendant to testify at joint trial) *United States v. Alcantar*, No. CR99-2016, 2000 WL 34029133, *1 (N.D. Iowa June 1, 2000) (magistrate judge's report stating same). The trial court was also unlikely to grant a severance so late at the end of trial – and Petitioner neither alleges nor establishes that

any such request would have been granted.  Additionally, given that Mason could have invoked his Fifth Amendment right against self-incrimination if called to testify, defense counsel may have reasonably determined that it would not be in Petitioner's best interest to try to call him as a witness.  *See Davis v. Lafler*, 658 F.3d 525, 537-38 (6th Cir. 2011).

With respect to Turner, the record indicates that defense counsel was aware of him at the time of trial and likely made a strategic decision not to produce him.  During the cross-examination of Donteau Dennis, counsel elicited that Dennis knew Turner.  *See* 3/20/08 Trial Tr.,  p. 50.  During the cross-examination of Laketha Boutire, co-defendant Mason's girlfriend, counsel elicited that Boutire saw Turner in co-defendant Jackson's Jeep at the deceased victim's house on the day of the shooting, but did not see Petitioner at that time.  *See* 03/24/08 Trial Tr., p. 72.  During closing argument, defense counsel was then able to argue that the prosecution was aware of Turner, yet failed to produce him despite Boutire's claim that Turner, not Petitioner, was in co-defendant Jackson's Jeep.  *Id.* at pp. 142-43.  Such a strategy of challenging the prosecution's case and creating doubt about the investigation, rather than calling a witness who seems to have credibility issues, was reasonable.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss*, 286 F.3d at 859.  Petitioner was not deprived of a substantial defense.

25

With regard to both witnesses, counsel may have also reasonably determined not to call them as witnesses at trial due to their potential credibility issues.  The evidentiary hearing record reveals that there were discrepancies between the witnesses' affidavits and their own evidentiary hearing testimony, that there were inconsistencies in the witnesses' testimony relative to each other and with co-defendant Jackson's statement.  In fact, Mason's own counsel testified that his post-trial version of events differed from what he told her at the time of trial.  As previously discussed, counsel is not required to call a witness whose credibility is questionable, *Thurmond*, 489 F. App'x at 840, and counsel may have reasonably decided that contesting the prosecution's case would be more effective in creating reasonable doubt than presenting witnesses who could be subject to significant challenge.  *Hale*, 512 F. App'x 522.

Lastly, as with the potential alibi witnesses, the fact that Petitioner acquiesced in trial counsel's decision not to call any defense witnesses supports a finding that counsel's decision was strategic and that it was reasonable at the time of trial.  Furthermore, given the witnesses' credibility issues, coupled with the surviving victim's consistent identifications of Petitioner as one of the perpetrators, Petitioner cannot demonstrate that he was prejudiced by counsel's conduct.  Petitioner fails to establish that he was deprived of a substantial defense or that counsel was otherwise ineffective under the *Strickland* standard.  Habeas relief is not warranted on this claim.

### B.        Sufficiency of the Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution

presented insufficient evidence to support his first-degree murder and conspiracy to

commit murder convictions.  Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a

sufficiency of the evidence claim is "whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307,

319 (1979).  A federal habeas court views this standard through the framework of 28

U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the

AEDPA, challenges to the sufficiency of the evidence "must survive two layers of

deference to groups who might view facts differently" than a reviewing court on habeas

review – the factfinder at trial and the state court on appellate review – as long as those

determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Furthermore, the *Jackson* standard must be applied "with explicit reference to the

substantive elements of the criminal offense as defined by state law."  *Brown v. Palmer*,

441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).  "A

reviewing court does not re-weigh the evidence or re-determine the credibility of the

witnesses whose demeanor has been observed by the trial court." *Matthews v.*

*Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S.

422, 434 (1983)).  Accordingly, the "mere existence of sufficient evidence to convict . . .

defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the

defendant intentionally killed the victim and that the killing was premeditated and

deliberate.  *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); MICH.

COMP. LAWS § 750.316.  Premeditation and deliberation may be established by evidence

showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the

killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the

homicide."  *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see*

*also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999).  The

prosecution must prove beyond a reasonable doubt that the defendant committed the

charged offense.  *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  Direct

or circumstantial evidence and reasonable inferences arising from that evidence may

constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458,

466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Dell v. Straub*, 194

F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409; *see also People v.*

*Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he or she gave the aid or encouragement. *People v. Carines*, 460 Mich. 750, 757-58, 597 N.W.2d 130 (1999); *see also People v. Moore*, 470 Mich. 56, 679 N.W.2d 41 (2004); MICH. COMP. LAWS § 767.39. An aider and abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich. at 757-58.

A conspiracy under Michigan law involves the mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or a legal act by unlawful means. *See People v. Anderson*, 418 Mich. 31, 36, 340 N.W.2d 634 (1983); MICH. COMP. LAWS § 750.157a. Conspiracy may be established by circumstantial evidence and may be based on inference. *People v. McKenzie*, 206 Mich.

App. 425, 428, 522 N.W.2d 661 (1994).  Direct proof of agreement is not required, nor is

it necessary that a formal agreement be proven.  It is sufficient if the circumstances, acts,

and conduct of the parties establish an agreement in fact.  *People v. Justice (after*

*remand)*, 454 Mich. 334, 347, 562 N.W.2d 652 (1997).

The Michigan Court of Appeals denied relief on this claim, explaining in relevant

part:

> Hickey does not dispute that Jackson and Mason could properly be found
> guilty of first-degree murder in connection with Peterson's shooting death.
> Accordingly, the first element of aiding and abetting is satisfied. Further,
> we disagree with Hickey's claim that the evidence was insufficient to
> establish either that he assisted or encouraged Jackson or Mason in
> committing the crime, or that he did not act with the intent or knowledge
> that Peterson would be killed. A jury could infer from Dennis's testimony
> that Jackson, Mason, and Hickey were acting in concert pursuant to a plan
> whereby Mason would entice Peterson and Dennis away from Peterson's
> home to a location where Hickey would kill Dennis, and Jackson and
> Mason would kill Peterson. The evidence supported an inference that
> Hickey was the passenger in Jackson's vehicle, and that Jackson attempted
> to conceal Hickey's presence from Dennis. The evidence also showed that
> Mason and Jackson parked their vehicles in a manner that prevented
> Peterson from driving away and that, after Dennis left Mason's vehicle,
> Hickey exited Jackson's vehicle and shot Dennis, while Mason and Jackson
> exited their respective vehicles and shot Peterson who was still inside the
> vehicle that Mason drove. A trier of fact could reasonably find beyond a
> reasonable doubt that Hickey aided and abetted Peterson's shooting death
> by shooting Dennis, thereby allowing Mason and Jackson to act without any
> threat of interference from Dennis, and that Hickey acted with knowledge
> of Mason's and Jackson's intent to kill Peterson. Accordingly, there was
> sufficient evidence to convict Hickey of first-degree premeditated murder
> under an aiding and abetting theory.

>    Furthermore, Dennis's testimony describing the coordinated actions of
>    Hickey, Mason, and Jackson supported an inference that they were acting
>    pursuant to a common plan to entice both Peterson and Dennis away from
>    Peterson's home, and to then isolate and shoot them both. Accordingly, the
>    evidence was also sufficient to support Hickey's conviction of conspiracy to
>    commit murder.

*Hickey*, 2011 WL 801034 at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence to establish Petitioner's guilt of first-degree murder as an aider or abettor and conspiracy to commit murder through the testimony of the surviving victim, Donteau Dennis, as well as reasonable inferences from that testimony. To be sure, a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases). Dennis' descriptions of Petitioner's actions during the incident establish his intent to aid and abet the murder of Peterson and to act in concert with his co-defendants. Considered in a light favorable to the prosecution, such evidence was sufficient to show that Petitioner, acting as an aider and abettor, committed the premeditated murder with his co-defendants and that they conspired to do so.

Petitioner challenges the inferences the jury drew from the testimony presented during trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to

resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d

594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A

federal habeas corpus court faced with a record of historical facts that supports conflicting

inferences must presume - even if it does not affirmatively appear in the record - that the

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming

that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable

to the prosecution, established beyond a reasonable doubt that Petitioner committed the

crimes of which he was convicted. Habeas relief is not warranted on this claim.

### C.    Prosecutorial Misconduct Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecutor

engaged in misconduct by mis-characterizing the evidence. Specifically, he alleges that

the prosecutor erroneously argued that Petitioner shot Donteau Dennis eight times,

improperly accused defense counsel of lying and denigrated counsel and the defense.

Respondent contends that this claim is barred by procedural default and lacks merit.

The United States Supreme Court has made clear that prosecutors must "refrain

from improper methods calculated to produce a wrongful conviction." *Berger v. United

States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, however,

a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so

infected the trial with unfairness as to make the resulting conviction a denial of due

process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _,

132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

The Michigan Court of Appeals reviewed this claim for plain error and denied

relief finding that the prosecutor's remarks were proper and/or that they did not affect

Petitioner's substantial rights.  The court explained in relevant part:

> The prosecutor did not improperly argue facts not supported by the
> evidence when she asserted that Dennis had been shot eight times. Dennis
> testified on direct examination that he received eight gunshot wounds.
> Although defense counsel elicited on cross-examination that it was possible
> that a single bullet caused more than one wound, no medical testimony
> supporting this theory was presented. Because a prosecutor is permitted to
> draw reasonable inferences from the facts of the case, the prosecutor
> properly could rely on Dennis's testimony to argue that Dennis was shot
> eight times. *People v. Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).
> Accordingly, there was no plain error.
>
> Hickey also argues that the prosecutor improperly accused defense counsel
> of fabrication and improperly denigrated counsel by labeling him a liar. A
> prosecutor may not personally attack defense counsel, denigrate the
> defense, or question defense counsel's veracity by suggesting that counsel is
> intentionally attempting to mislead the jury. *People v. Watson*, 245 Mich
> App 572, 592; 629 NW2d 411 (2001); *People v. Kennebrew*, 220 Mich App
> 601, 607-608; 560 NW2d 354 (1996); *People v. Wise*, 134 Mich App 82,
> 101-102; 351 NW2d 255 (1984). However, a prosecutor's comments must
> be considered in light of defense counsel's arguments. *People v. Messenger*,
> 221 Mich App 171, 181; 561 NW2d 463 (1997). Accordingly, a comment
> that might appear improper standing alone "may not rise to an error

*Hickey v. Palmer*
Case No. 2:12-CV-14635
Page 34 of 46

requiring reversal when the prosecutor is responding to the defense counsel's argument." *Kennebrew*, 220 Mich App at 608.

Here, the prosecutor's "cheap novel" and "pure fiction" comments were made in the context of responding to defense counsel's entirely hypothetical theory that Dennis and Peterson were shot while trying to rob drug dealers, and that Dennis falsely accused Hickey to conceal Dennis's own illegal conduct. The prosecutor's comments were intended to convey that defense counsel's theory was not supported by any evidence. Under the circumstances, the comments did not constitute plain error.

Further, reversal is not required because of the prosecutor's statement that defense counsel told a "bal[d]-face" lie by accusing the prosecutor of coercing Dennis into lying by threatening to charge him with perjury. That statement was made in response to Hickey's counsel's comments that inaccurately tied Dennis's testimony to possible perjury charges. Although it may have been improper to characterize defense counsel's statement as a "bald-faced lie," considering the context in which it was made, the statement did not affect Hickey's substantial rights.

*Hickey*, 2011 WL 801034 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor's remarks about Petitioner shooting Donteau Dennis eight times were based upon Dennis's testimony that he suffered eight gunshot wounds. It is well-established that a prosecutor may rely upon the facts as presented through the trial testimony and may argue reasonable inferences from the evidence. *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The prosecutor's characterization of defense counsel's arguments as "pure fiction," while strong, was not improper. The prosecutor's comments were made in response to defense

34

counsel's claims, to refute the defense case, and to argue that the defense theory was not

supported by the evidence.  While it is inappropriate for a prosecutor to make personal

attacks on a defendant or defense counsel, *United States v. Young*, 470 U.S. 1, 9 (1985), a

prosecutor may highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*,

402 F.3d 635, 646 (6th Cir. 2005), and argue the facts supporting the prosecution's theory

and the lack of evidence supporting the defense theory.  *United States v. Forrest*, 402

F.3d 678, 686 (6th Cir. 2005).  Similarly, while the prosecutor's remark that defense

counsel told a "bold-face lie" was perhaps uncalled for, it was made in response to

defense counsel's accusation that the prosecutor coerced Dennis into testifying at trial.

As such, it was not entirely improper.

Moreover, to the extent that any of the prosecutor's remarks were improper, they

were not pervasive or misleading so as to render the trial fundamentally unfair.  Any

potential prejudice to Petitioner was mitigated by the fact that the trial court properly

instructed the jurors on the law, explained that the attorneys' comments were not

evidence, and directed them not to let sympathy or prejudice influence their decision.  *See

Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).  Jurors are presumed to

follow the court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing

*Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66

(1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to

follow it."). Petitioner fails to establish that the prosecutor engaged in misconduct which rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

**D.       Judicial Misconduct Claim**

Petitioner next asserts that he is entitled to habeas relief because the trial court engaged in misconduct by improperly admitting hearsay testimony and by improperly instructing the jury about the evidence. Respondent contends that this claim lacks merit.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims involve two types of cases. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002). Adverse rulings themselves are generally insufficient to establish bias or prejudice. *See Liteky*, 510 U.S. at 555; *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006) (citing *Liteky*). A constitutional

violation occurs only when a judge's rulings or statements show "a predisposition so

extreme as to display clear inability to render fair judgment." *Johnson v. Bagley*, 544

F.3d 592, 597 (6th Cir. 2008). In reviewing a judicial bias claim, a federal habeas court

should presume that the trial judge properly discharged his or her official duties. *Johnson*

*v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

The Michigan Court of Appeals denied relief on this claim finding that any error

by the trial court in admitting testimony was harmless and that any error in instructing the

jury did not pierce the veil of judicial impartiality so as to affect Petitioner's substantial

rights. The court explained:

> In the first part of this issue, Hickey challenges the trial court's admission of
> Sergeant Anderson's testimony regarding Dennis's statements during a
> hospital interview on September 30, a few days after the shooting.
> Anderson testified that Dennis identified "Kainte" (defendant Hickey) as
> the person who shot him. The trial court overruled Hickey's hearsay
> objection, concluding that Dennis's statements, although hearsay, qualified
> for admission as a dying declaration. We agree that the trial court erred in
> admitting Dennis's hospital statements. MRE 804(b)(2) provides that a
> statement is not excluded by the hearsay rule if the statement was "made by
> a declarant while believing that the declarant's death was imminent,
> concerning the cause or circumstances of what the declarant believed to be
> impending death." This exception is applicable only when the declarant is
> unavailable. Here, Dennis was an available witness at trial. Further, there
> was no foundation for a finding that Dennis believed that his death was
> imminent at the time he made the statement in the hospital. Thus, as
> plaintiff concedes, the trial court erred in admitting Dennis's hearsay
> statements to Sergeant Anderson under the dying declaration exception to
> the hearsay rule.

Nonetheless, we agree that the error was harmless because it is not more probable than not that the error was outcome-determinative. *People v. Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). The testimony was cumulative of Officer Senter's testimony that Dennis identified Hickey at the crime scene as the person who shot him. It was also cumulative of Dennis's own trial testimony identifying Hickey as the shooter, which was subjected to extensive cross-examination by all three defendants. Under these circumstances, the erroneous admission of Dennis's hearsay statement at the hospital was harmless. *People v. Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010).

Hickey also contends that the trial court exhibited partiality by instructing the jury, contrary to the evidence, that Dennis was not part of a planned robbery. The instruction was given in response to statements by Jackson's and Hickey's counsels in their opening statements. In his opening statement, Hickey's counsel remarked in reference to Dennis, "What you have here is a story and it's a simple story, but it's told by a man who you'll find out the evidence will show is a thug, a thief, and a, robber, who has told an ever changing story about what supposedly happened that night." Hickey's counsel also stated that the "sole witness by the prosecutor ... always has said he's a stick up man." Counsel stated that the evidence would show that Dennis "went out there to make a drug heist robbery" that ended in the intended victims firing back at him and his co-felons.

Sergeant Anderson later testified that although Dennis had a prior conviction involving possession of a stolen vehicle, he had no record of any robbery-related convictions. The trial court overruled Mason's motion to strike Sergeant Anderson's testimony, ruling that it was admissible to respond to defense counsels' characterizations of Dennis in their opening statements. The trial court also commented, "Nobody was out committing any armed robbery." Later, during the court's jury instructions, the court instructed the jury as follows:

> You are to focus on the testimony, the evidence that was admitted by the court. And as I explained to you in the beginning, emotion and personalities are to be left out completely because you deal with the facts and you must be

objective. And the court advised you or will advise you again
that any inflammatory remarks relating to the witness in the
case as a robber, you will exclude that because that is not
evidence.

The attorneys may bring to the jury's attention any previous
convictions which involved theft, dishonesty and false
statement but even then that is only used for you to impeach
the credibility. You may consider that as it weighs on the
credibility.

But there is no evidence whatsoever that there was any
robbery committed or going to be committed. And by
referring to the witness as a robber, of course, is not evidence
in the case. Ignore it. That is inflammatory. You look at the
facts in the case because there is no evidence to sustain that.
There might be conclusions as to what certain words mean.
Conclusions have to be drawn by the jury. They cannot be
drawn by the attorneys. And you may draw whatever
conclusion you wish.

But those are merely arguments. That is not evidence and you
are not to be inflamed or incited by the use of any
inflammatory or excitable words because that is not evidence.
And, again, remember that the arguments are the beginning or
at the end is not evidence.

Because Hickey did not object to this jury instruction, any claim of
instructional error is reviewed for plain error affecting Hickey's substantial
rights. *Carines*, 460 Mich at 763. To the extent Hickey also argues that the
trial court's instruction implicates his constitutional right to present a
defense, because he did not raise this claim below, our review is also
limited to plain error. *Id*.

Although a defendant has the constitutional right to present a defense,
*People v. Hayes*, 421 Mich 271, 278-279; 364 NW2d 635 (1984), a trial
court has broad discretion in matters involving the conduct of trial. *People*

*v. Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). However, a trial court may not pierce the veil of judicial impartiality by engaging in conduct or making comments that might unduly influence the jury and thereby deprive a defendant of his right to a fair and impartial trial. Id. at 308. When a trial court engages in excessive interference in the examination of witnesses, makes repeated rebukes and disparaging remarks to defense counsel, or demonstrates marked impatience in the presence of the jury, such conduct can deprive the defendant of a fair trial. *People v. Conyers*, 194 Mich App 395, 404; 487 NW2d 787 (1992).

We agree that it was improper for the trial court to suggest and instruct the jury that no robbery was intended on the day of the offense. Dennis admitted on direct examination that he agreed to go with Mason to "hit a lick," which referred to a robbery. This testimony indicates, as the prosecutor acknowledged, that Dennis, at least subjectively, intended to participate in a planned robbery. However, we disagree with Hickey's claim that the trial court's improper comment and instruction pierced the veil of judicial impartiality or otherwise affected Hickey's substantial rights. The gist of the instruction was not an effort to influence the jury against Hickey or to demonstrate partiality for Dennis, but rather to address what the trial court believed was the defense attorney's characterization of Dennis during opening statement as a thug, thief, robber, and "stick-up man." The trial court properly advised the jury that the lawyers' statements are not evidence and that the jury must disregard inflammatory statements not supported by any evidence. The trial court also properly observed that there was no evidence that Hickey or the other codefendants intended to commit a robbery, given that the evidence showed that, from their perspective, the purported robbery was a subterfuge to lure the two victims away from Peterson's house. In that regard, the trial court's comment and instruction that there was no evidence that a robbery was intended was not factually inaccurate. Against this backdrop, the trial court's conduct and instruction did not affect Hickey's substantial rights. Further, given the defense attorneys' characterization of Dennis in their opening statement, it was not an abuse of discretion for the trial court to allow Sergeant Anderson to testify that Dennis had no prior criminal record for theft-related offenses. The testimony was responsive to an issue raised by defense counsel. *See Kennebrew*, 220 Mich App at 608.

*Hickey*, 2011 WL 801034 at *5-7

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  First, to the extent that Petitioner merely challenges the trial court's evidentiary rulings, he fails to establish judicial bias. Adverse rulings alone are insufficient to establish bias or prejudice, *see Liteky*, 510 U.S. at 555; *Hynes*, 467 F.3d at 960, *see also Vliet v. Renico*, 193 F. Supp. 2d 1010, 1016 (E.D. Mich. 2002), and Petitioner fails to allege facts to show that the trial court exhibited any deep-seated antagonism toward the defense or favoritism toward the prosecution in making such rulings.  Moreover, any error in admitting Dennis's hospital statements to the police did not render the trial fundamentally unfair and/or was harmless given that Dennis identified Petitioner at the scene and at trial as the person who shot him.

Second, to the extent that Petitioner contests the trial court's jury instructions, he fails to show that the court was biased.  Rather, the record indicates that the trial court was trying to ensure that the jury properly consider the evidence and not rely upon unsupported or disparaging characterizations of the witness by the attorneys.  While the trial court may have improperly commented on whether a robbery was intended or occurred on the day of the shooting, the court did not pierce the veil of judicial impartiality.  Additionally, it is well-settled that for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions

are undesirable, erroneous or universally condemned.  Rather, taken as a whole, they

must be so infirm that they rendered the entire trial fundamentally unfair.  *Estelle v.*

*McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  Such

was not the case here.  The trial court's robbery remarks did not concern the elements of

the offenses or implicate Petitioner's guilt in the crime.  Considered as a whole, the jury

instructions were adequate to inform the jury about the elements of the charged offenses

and the burden of proof and to protect Petitioner's rights.

Lastly, the Court notes that the trial court instructed the jury that it should decide

the case based upon the evidence and that it was "not an advocate" and did not "have a

side."  *See* 3/25/08 Trial Tr., p. 3.  Such an instruction mitigates the prejudicial effect of

the trial court's improper remark.  *See United States v. Powers*, 500 F.3d 500, 514 (6th

Cir. 2007); *United States v. Johnson*, 182 F. App'x 423, 434 (6th Cir. 2006).  Jurors are

presumed to follow the court's instructions.  *Penry*, 532 U.S. at 799; *Powell*, 469 U.S. at

66.  Petitioner fails to establish that the trial court was biased against him or that the jury

instructions otherwise rendered his trial fundamentally unfair.  Habeas relief is not

warranted on this claim.

### E.       Denial of Motion for New Trial Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court

erred in denying his motion for new trial based upon newly-discovered evidence – the

affidavits from co-defendant Mason and Hosiea Turner.  Respondent contends that this claim is not cognizable on habeas review and/or that it lacks merit.

The Michigan Court of Appeals denied relief on this claim finding that the evidence, while newly available, was not newly-discovered, that Petitioner failed to show why he was unable to produce the testimony at the time of trial, and that the evidence, particularly Mason's affidavit, was unreliable.  *Hickey*, 2011 WL 801034 at *10.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  The Supreme Court has held that states have no constitutional obligation to provide post-conviction remedies. *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).  Consequently, the Sixth Circuit has consistently held that "errors in post-conviction proceedings are outside the scope of federal habeas corpus review."  *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007); *see also Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) (citing *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986), in ruling that federal habeas proceedings cannot be used to challenge errors or deficiencies in state post-conviction proceedings); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").  Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Furthermore, claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* In *House v. Bell*, the United States Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007); *see also Sitto v. Lafler*, 279 F. App'x 381, 381-82 (6th Cir. 2008) (affirming denial of habeas relief on similar claim); *Thomas v. Perry*, No. 2:11-CV-14363, 2013 WL

44

1747799, *6 (E.D. Mich. April 23, 2013) (denying habeas relief on newly discovered evidence claim). Petitioner fails to state a claim upon which habeas relief may be granted as to this issue. Habeas relief is not warranted on this claim.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to relief on his claims and that the petition for a writ of habeas corpus must be denied.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his claims. No certificate of appealability is warranted. Nor should Petitioner be granted leave to

45

*Hickey v. Palmer*
Case No. 2:12-CV-14635
Page 46 of 46

proceed in forma pauperis on appeal as an appeal cannot be taken in good faith.  *See* FED.

R. APP. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and

**DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and

leave to proceed in forma pauperis on appeal is **DENIED**.


S/Arthur J. Tarnow _____
Arthur J. Tarnow
Senior United States District Judge

Dated: January 8, 2016

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on January 8, 2016, by electronic and/or ordinary mail.

S/Catherine A. Pickles _____
Judicial Assistant

46